United States of America
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVE. NW, HQ-462
WASHINGTON, DC 20580

Bureau of Consumer Protection
Acting Deputy Director

**Jonathan Cohen**
**(202) 326-2551; jcohen2@ftc.gov**

October 27, 2026

**VIA ELECTRONIC CASE FILING (ECF)**

United States District Judge
[To Be Assigned]
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: No. 26-mc-532: Request for Transfer or, Alternatively, a Pre-Motion Conference Concerning Motion to Compel Compliance With Federal Subpoena Issuing Court: N.D. Tex. (*FTC v. WPATH*, No. 26-cv-748)**

Your Honor,

We represent the Federal Trade Commission ("FTC"), which subpoenaed Mount Sinai Hospitals Group, Inc. ("Sinai"). Sinai conferred with the FTC in good faith and indicated its desire and intent to comply. However, shortly before Sinai could produce an initial batch of responsive materials, Sinai explained to the FTC that, "out of the blue,"[1] the New York Attorney General's office ("NYAG") contacted it. Specifically, the NYAG "reminded" Sinai that—purportedly due to the State law that NYAG refers to as New York's "Shield Law" ("State law")—it could not comply with the FTC's Rule 45 subpoena unless both Sinai and the FTC satisfied various additional and impossible requirements that State law claims to impose on certain Rule 45 subpoenas. Accordingly, the NYAG's "reminder" trapped Sinai between conflicting legal requirements (namely, the subpoena's and the State law's) and further forced the FTC to seek relief against Sinai—an innocent party that merely sought to comply with routine process pursuant to the Federal Rules.[2]

[1] Attachment 3 to Declaration of Jonathan Cohen ("Cohen Decl."), Exhibit A, at 2.

[2] Even as recently as early October, Sinai explained to the FTC that Sinai was ready to produce documents, were it not for NYAG's injecting itself into the Rule 45 subpoena process. Cohen Decl. at ¶ 5.

In this unfortunate situation that NYAG created, the FTC has no practical procedural alternative other than to initiate enforcement proceedings against Sinai through this miscellaneous action and ask the Court to transfer these proceedings to the issuing court pursuant to FRCP 45(f). Alternatively, the FTC requests a pre-motion conference in accordance with Local Civil Rule 37.2 in advance of a formal motion to compel compliance with the subpoena under Rule 45(d)(2)(B)(i).

## I. Background

Along with several State plaintiffs, the FTC sued certain defendants that promote medical transition services for minors suffering from gender dysphoria or other conditions. The litigation is thus focused on, and limited to, medical transition of minors—for instance, puberty blockers and mastectomy—and medical choices made by (or on behalf of) minors. The central issue is whether adequate substantiation (*i.e.*, proof) exists that medical transition benefits children in the ways that those defendants claim. The relief sought would not prohibit the treatments at issue. It would instead require the defendants to substantiate the benefits claimed.

As part of this litigation, the FTC subpoenaed eight parties, including Sinai, that likely have documents and other information related to the pediatric transition services at issue. Crucially, neither Sinai's subpoena nor any other seeks any patient's name or other information that could identify any patient.[3]

Sinai received its subpoena on September 17, 2026.[4] It indicated its wish to cooperate, and both parties engaged in good faith regarding a variety of ordinary production-related issues.[5] Sinai did not serve objections to the subpoena, and the FTC agreed to extend the return date to accommodate a rolling production schedule, with the first subpoenaed documents due on October 2.[6] On September 30, days before the subpoena's amended return date for the first production—a deadline that Sinai indicated it could meet[7]—Sinai notified the FTC that NYAG contacted it "out of the blue" and explained that, pursuant to the State law[8] and notwithstanding the subpoena's return date, Sinai could not produce documents for at least thirty days.[9] Additionally, and notwithstanding the absence of an affidavit requirement in Rule 45, the NYAG explained that Sinai could not produce documents unless the FTC provides an affidavit that the State law purports to require.[10]

---

[3] Attachment 1 to Cohen Decl. at 5 (explaining that "[n]otwithstanding anything else herein, no part of this subpoena seeks Protected Health Information," "the identity of any patient," or "information covered by the attorney-client privilege, work product doctrine, or doctor-patient privilege").

[4] Attachment 2 to Cohen Decl.

[5] Attachment 3 to Cohen Decl. at 3–11.

[6] *Id.* at 4–5.

[7] *Id.* at 1–3.

[8] N.Y. Gen. Bus. Law § 394-i.

[9] Attachment 3 to Cohen Decl. at 2.

[10] To the FTC's knowledge, Sinai has not adopted the NYAG's position. Instead, it appears reasonably concerned that it cannot ignore its regulator's warning.

To resolve the issue amicably and without initiating unnecessary subpoena-enforcement proceedings against Sinai—a party that sought to cooperate—the FTC contacted NYAG several times and ultimately arranged a meet-and-confer. On October 13, the FTC and NYAG met for nearly an hour. Both sides exchanged positions cordially and professionally notwithstanding the underlying litigation's charged history.[11] During the call, NYAG confirmed that it had contacted Sinai and "reminded" Sinai about the "Shield Law."[12] The FTC directed NYAG to the Rules Enabling Act ("REA"), which provides that "[a]ll laws in conflict with [the Federal] rules shall be of no further force or effect."[13] NYAG did not provide a response to the REA's straightforward preemptive effect but offered to consider it further.

NYAG responded when the parties reconvened their cordial and professional exchange several days later. According to NYAG, the REA's language preempting conflicting laws applies only to conflicting *federal* laws, notwithstanding the REA's unrestricted reference to "*all* laws,"[14] or the REA's manifest purpose of establishing uniform procedures in federal courts—a purpose that imposing State-specific requirements on federal subpoenas would defeat.[15] Indeed, numerous decisions hold that the Federal Rules preempt State laws which impose additional or different procedural requirements on federal proceedings.[16] NYAG also noted that Rule 45(d)(3)(A)(i) requires that subpoenas permit a "reasonable" time to comply, and claimed that whether a thirty-day across-the-board requirement for subpoenas like the one at issue is the minimum reasonable time is "in the eye of the beholder."[17] However, NYAG gave no reason why the New York legislature is the beholder, rather than Congress. Put differently, NYAG offered no reason why New York's perspective on what is reasonable should override the Federal Rules, which provide no bright-line, thirty-day minimum

[11] The litigation with the main-action defendants has been contentious. During the FTC's pre-suit investigation, one defendant obtained a preliminary finding in the District Court for the District of Columbia that a Civil Investigative Demand ("CID") was retaliatory, *WPATH v. FTC*, 2026 WL 1257321, *5 (D.D.C. May 7, 2026), although that court permitted the balance of the investigation to proceed, *id.*, and the Ninth Circuit subsequently rejected the reasoning upon which that court relied, *see QueerDoc, PLLC v. United States Dep't of Just.*, 187 F.4th 1112, 1137–48 (9th Cir. 2026). The defendant later returned to that court, seeking to enjoin the action now pending before the issuing court (N.D. Tex.), but that court quickly denied the defendant's request. *See WPATH v. FTC*, 2026 WL 1999008, at *1–3 (D.D.C. July 10, 2026). The defendant also sought discovery from the FTC, falsely alleging that FTC lawyers had unlawfully conspired with the Department of Justice to violate the preliminary injunction, *see WPATH v. FTC*, No. 26-cv-532 (D.D.C. June 30, 2026) (ECF 46-1), but—three days after the FTC produced significant contrary evidence, *see id.* at ECF 60 (July 28, 2026)—the defendant withdrew its motion rather than serve a reply or otherwise allow that court to consider the defendant's baseless allegations, *see id.* ECF 62 (July 31, 2026).

[12] Cohen Decl. at ¶ 8.

[13] 28 U.S.C. § 2072(b).

[14] 28 U.S.C. § 2072(b) (emphasis added).

[15] *See, e.g.*, *Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401, 408 (5th Cir. 1960) (explaining that "the historic purpose of the Federal Rules and the forces which led Congress to pass the Rules Enabling Act" were "to reverse the philosophy of conformity to local state procedure and establish, with but few specific exceptions, an approach of uniformity within the whole federal judicial trial system"); *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (same). Nationwide uniformity is inconsistent with State-specific exceptions.

[16] *See infra* n.38.

[17] Cohen Decl. at ¶ 9.

and indeed contemplate that subpoena compliance may be due in fewer than *fourteen* days. *See* Fed. R. Civ. P. 45(d)(2)(B) (requiring that objections be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served").

## II. The Court Should Transfer This Matter to the Issuing Court.

Rule 45(f) provides this Court with discretion to transfer this dispute to the issuing court. Transfer makes sense given the seven other identical subpoenas already outstanding, with more likely to come. As of this writing, a second cooperative subpoena recipient in another State has raised concerns about a similar law in that State, and the FTC has issued at least one additional subpoena to an entity in a third State with a similar law. Because Rule 45(d)(2)(B)(i) requires that the FTC initiate subpoena enforcement proceedings in "the district where compliance is required," failing to transfer the matter will likely force the FTC to simultaneously litigate substantially similar issues in multiple States. Rule 45's drafters created Rule 45(f) to address precisely this problem, noting that circumstances justify transfer when "the same issues are likely to arise in discovery in many districts."[18] Indeed, the Second Circuit has explained that Rule 45(f) is "primarily focused on avoiding piecemeal litigation."[19] Transferring to the issuing court avoids piecemeal litigation and instead allows the court most familiar with the matter to decide common questions consistently. Accordingly, the Court should transfer this matter.

## III. Alternatively, the Court Should Require Compliance.

As the Court is aware, when State law conflicts with federal law, under the U.S. Constitution's Supremacy Clause, federal law prevails.[20] There are generally three types of preemption including, *first*, "express preemption, where Congress has expressly preempted local law."[21] "The Federal Rules are as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the mandate of a Federal Rule than they do to disregard constitutional or statutory provisions."[22] And the REA expressly preempts any inconsistent State law through clear language providing that "[*a*]*ll* laws in conflict with [the Federal] rules shall be of no further force or effect."[23]

Multiple purported requirements of the State law conflict with both the rights and obligations of parties sending and receiving Rule 45 subpoenas. For example:

- <u>Thirty-Day Restriction</u>. Rule 45 permits the serving party to set a reasonable return date, which can be (and sometimes is) less than thirty days. In this instance, the FTC and Sinai agreed to a return date for certain documents

---

[18] Fed. R. Civ. P. 45 Advisory Committee's Notes to 2013 Amendment; *see In re Subpoenas to Leeds Equity Partners*, 2025 WL 2662583, at *1 (S.D.N.Y. Sept. 17, 2025) (relying on the Notes when transferring a dispute under Rule 45(f)).

[19] *American Plan Adm'rs v. South Broward Hosp. Dist.*, 39 F.4th 59, 61 (2d Cir. 2022).

[20] U.S. CONST. ART. VI.

[21] *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (per curiam) (cleaned up).

[22] *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) (cleaned up).

[23] 28 U.S.C. § 2072(b) (emphasis added).

fifteen days after service. However, the State law purports to prohibit Sinai from honoring its agreement and responding for at least thirty days,[24] and likely longer.[25]

- Affidavit Requirement. The State law prohibits Sinai from responding, even after thirty days, unless the FTC executes a sworn affirmation, "under penalty of perjury," that it will not use subpoenaed materials in certain ways, including in any matter that could lead to a "legal consequence" of any sort for anyone involved in enabling or facilitating the services at issue.[26] The FTC cannot honestly execute such a document given that its purpose in this lawsuit, as for plaintiffs in any lawsuit, is to seek a "legal consequence."[27] Accordingly, although FRCP 45 permits the subpoena at issue, the State law prohibits it.

Because these requirements "conflict" with FRCP 45, they fall under the REA's express preemption clause and are "of no further force or effect."[28]

*Second*, in addition to express preemption, "field preemption" applies where, as here, "Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law."[29] The REA creates field preemption because, through the law, Congress expressed "an intent to occupy an entire regulatory field to the exclusion of the states."[30] In addition to preempting "all laws" that conflict with the FRCP, the REA grants "[t]he Supreme Court . . . the power to prescribe general rules of practice and procedure . . . for cases in the United States district

---

[24] N.Y. Gen. Bus. Law § 394-i(2)(c). The only exception is if the FTC obtained a court order, *see id.*, which is a substantial burden that FRCP 45 does not impose on a party seeking to set a return date within thirty days. Importantly, under the State law thirty days is the "*minimum*" time that the party issuing the subpoena must wait. *Id.* (emphasis added). The actual time is likely longer, and possibly much longer. First, the thirty days does not run from service, but from when the subpoena recipient "notifie[s]" the NYAG. *See id.* To the FTC's knowledge, that has still not occurred, as the NYAG contacted Sinai, not the other way around. Indeed, under the onerous requirements the State law imposes, Sinai cannot produce documents at all unless it has notified the NYAG before the *earlier* of five business days after receiving the subpoena (September 24, 2026) or five business days before producing documents. *Id.* § 394-i(2)(b)(i)(1). Again, to the FTC's knowledge, Sinai never provided such notice. Second, regardless of the time elapsed, and setting aside the fact that Sinai can no longer satisfy the notice requirements, Sinai still cannot produce until it makes "reasonable attempts" to notify various doctors, patients, and others, *id.* § 394-i(2)(b)(ii), and such "reasonable attempts" could take longer than thirty days.

[25] *See supra* n.24.

[26] N.Y. Gen. Bus. Law § 394-i(2)(a) (incorporating N.Y. Crim. Proc. Law § 570.17(1)(c)(ii)). To the extent relevant, in the underlying litigation, the defendant's President is in New York. Proof of Service, *FTC v. WPATH*, No. 26-cv-748 (ECF 26) (N.D. Tex. June 29, 2026) (noting service on Asa Radix); Amended Complaint, *FTC v. WPATH*, No. 26-cv-748 (ECF 70) (N.D. Tex. Aug. 18, 2026) (alleging that Radix is the defendant's President).

[27] N.Y. Gen. Bus. Law § 394-i(2)(a).

[28] 28 U.S.C. § 2072(b).

[29] *New York SMSA*, 612 F.3d at 104 (quotation marks omitted).

[30] *SGM Holdings LLC v. Andrews*, 743 F. Supp. 3d 545, 566 (S.D.N.Y. 2024) (quotation omitted) (holding that federal law, including Rule 11, preempted a New York attorney sanctions law); *see Burlington N.R. Co. v. Woods*, 480 U.S. 1, 7 (1987) (holding that Rule 38 displaced a State statute imposing penalties on unsuccessful appellants).

courts."[31] Thus, the REA occupies the field of federal practice and procedure, thereby rendering the rights and duties of parties serving Rule 45 subpoenas exclusively the province of the Federal Rules. The State law improperly expands the obligations of parties serving subpoenas, as discussed above, as well as the obligations of parties receiving them. For instance, in addition to the requirements identified above, the State law purports to impose additional burdens on Sinai, including the mandate that Sinai notify numerous third parties including, most likely, doctors, hospital personnel, minor patients, their parents, and others.[32] Put simply, because the State law purports to add obligations to subpoena servers and recipients, it is preempted on field preemption grounds.

*Third*, "conflict preemption" applies (1) "where local law conflicts with federal law such that it is impossible for a party to comply with both or" (2) "the local law is an obstacle to the achievement of federal objectives."[33] As observed above, "it is impossible for a party to comply with both" New York's law and Rule 45.[34] Sinai cannot begin its response within fifteen days, as the subpoena requires, yet also wait at least thirty days as the State law requires. Nor can the FTC serve the subpoena at issue either with the State-required affidavit (because the affidavit would be inaccurate), or without it (which would avoid a perjurious affidavit but render the subpoena purportedly invalid under the State law).

More broadly, the REA aims to establish "uniformity in the federal courts."[35] Indeed, "the historic purpose of" the REA and the Federal Rules is "to reverse the philosophy of conformity to local state procedure and establish, with but few specific exceptions, an approach of uniformity within the whole federal judicial trial system."[36] Because State-specific requirements defeat uniformity,[37] courts routinely hold as preempted State laws that burden compliance with federal subpoenas (including Rule 45 subpoenas).[38] Such requirements "stand[] as an obstacle to the accomplishment

---

[31] 28 U.S.C. § 2072.

[32] N.Y. Gen. Bus. Law § 394-i(2)(b)(ii).

[33] *New York SMSA*, 612 F.3d at 104.

[34] *Id.*

[35] *Hanna*, 380 U.S. at 472 (quotation omitted).

[36] *Monarch Ins.*, 281 F.2d at 408.

[37] *See*, *e.g.*, *Spiegel v. Engagetel*, 2015 WL 8986932, at *3 (N.D. Ill. Dec. 16, 2015) (holding that a State law that contradicted Rule 45 was an impermissible obstacle to "uniformity of federal procedure").

[38] For example, "a California-only exception to the duties of parties that receive subpoenas pursuant to Rule 45(e)" posed "a significant obstacle to the . . . uniformity of federal procedure" and was therefore preempted. *Id.* For another, Rule 4 preempted a Massachusetts law that required "delivery in hand" service. *Hanna*, 380 U.S. at 462–64; *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2012 WL 5877420, at *2–3 (S.D.N.Y. Nov. 21, 2012) (holding that even a State law-imposed ten-day delay "impede[d] the timely and expeditious process of discovery in aid of execution contemplated by the Federal Rules of Civil Procedure").

So too for State laws that impose additional requirements on subpoenas seeking health-related information. For example, an Oregon law that required "a valid court order" for subpoenas concerning "prescription monitoring information" was preempted because it "interpose[d] a significant obstacle" to federal subpoena authority. *Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1236 (9th Cir. 2017) (cleaned up). And a Texas law that prohibited disclosure of doctor-patient communications or "record[s] of the identity, diagnosis, evaluation, or treatment of a patient" without consent was preempted for the same reason. *United States v. Zadeh*, 820 F.3d 746, 750–51 (5th Cir. 2016). Examples abound. *See United States Dep't of Just. v. Ricco Jonas*, 2018 WL 6718579, at *1, 4–5 (D.N.H. Nov. 1, 2018),

and execution of the full purposes and objectives of Congress."[39] Indeed, as this Court has previously held, preemption occurs even when the obstacle is only a ten-day notice requirement, which is less onerous than the obstacles at issue here.[40] Given the significant burdens that the State law creates for parties serving and receiving subpoenas—burdens that do not apply to identical subpoenas served in other States—the State law undermines Congressional policy that federal practice should involve uniform procedures. Thus, the State law is preempted for this reason as well.

* * * *

In summary, the Court need not decide this straightforward application of basic preemption principles. Rather, in the interest of efficiency, the Court should transfer the action to the issuing Court. The FTC will contemporaneously serve New York with notice pursuant to Rule 5.1, but the Court need not wait to transfer this motion because, although Rule 5.1 and its companion statute permit New York to intervene "on the question of constitutionality," they do not permit New York to intervene to oppose a transfer.[41] And, notably, New York has already appeared before the issuing court through a multistate amicus brief supporting defendants' motion to dismiss.[42]

Alternatively, if the Court declines to transfer the action, it should grant a conference pursuant to L.R. 37.2, or accept this correspondence as the FTC's opening brief and request that Sinai and the NYAG respond.

Very truly yours,

Jonathan Cohen
Acting Deputy Director
Bureau of Consumer Protection
(*Pro Hac Vice* forthcoming)

---

*report and recommendation adopted*, 2019 WL 251246 (D.N.H. Jan. 17, 2019) (holding that a New Hampshire statute prohibiting disclosure of patient's names, addresses, and prescriptions without "a court order based on probable cause," even pursuant to a federal subpoena, was preempted); *Massanari v. Northwest Cmty. Mental Health Ctr.*, 2001 WL 1518137, at *1 (W.D.N.Y. Nov. 7, 2001) (holding that a New York law preventing disclosure of medical records pursuant to a federal subpoena was preempted).

[39] *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (quotation omitted).

[40] *See Universitas Education*, 2012 WL 5877420, at *2–3. Suffice it to say, the fact that the FTC can avoid the State law through a motion like this one does not save the law. Forcing parties seeking to enforce Rule 45 subpoenas—which are already issued by a federal court—to obtain court orders to enforce those subpoenas in every instance involving certain subject matter adds a State-specific and highly burdensome requirement to Rule 45's otherwise streamlined processes. And that burden falls at least partly on the receiving party, which now must respond to this motion despite its desire to comply.

[41] 28 U.S.C. § 2403(b).

[42] *See* Brief of Massachusetts *et al.*, *FTC v. WPATH*, No. 26-cv-748 (ECF 63) (N.D. Tex. Aug. 14, 2026).

**CC:** **<u>Via Email</u>**

Annie Chiang, Esq.* (AChiang@ftc.gov)
Deputy Director
R. Cooper Vaughan, Esq.* (RVaughan@ftc.gov)
Assistant Director
Michael C. Dingman, Esq.* (MDingman@ftc.gov)
Assistant Director
*Counsel for Plaintiff-Petitioner Federal Trade Commission*
* *Pro Hac Vice* forthcoming

David Bizar, Esq.
Assistant Attorney General
Deputy Chief, Consumer Protection Division
Office of the Attorney General of Texas
David.Bizar@oag.texas.gov
*Counsel for Plaintiff State of Texas*

Charles J. Gartland, Esq.
Civil Division Director
Alaska Department of Law
Charles.Gartland@alaska.gov
*Counsel for Plaintiff State of Alaska*

Eric H. Wessan, Esq.
Solicitor General
Iowa Attorney General's Office
Eric.Wessan@ag.iowa.gov
*Counsel to Plaintiff State of Iowa*

Benjamin J. Swanson, Esq.
Assistant Attorney General
Office of the Nebraska Attorney General
Benjamin.Swanson@nebraska.gov
*Counsel for Plaintiff State of Nebraska*

Sally Strauss, Esq.
Sally.Strauss@mountsinai.org
Marco Wong, Esq.
Marco.Wong@mountsinai.org
*Counsel to Respondent Mount Sinai*

Sudarsana Srinivasan, Esq.,
Chief, Health Care Bureau
Darsana@ag.ny.gov
Kate Ross, Esq. (Kate.Ross@ag.ny.gov)
Matthew Faiella, Esq. (Matthew.Faiella@ag.ny.gov)
Ivan Navedo, Esq. (Ivan.Navedo@ag.ny.gov)
*Counsel to Nonparty State of New York*

Katherine Dirks, Esq. (Katherine.Dirks@mass.gov)
Morgan Carmen, Esq. (Morgan.Carmen@mass.gov)
Adam Cambrier, Esq. (Adam.Cambrier@mass.gov)
*Counsel to Nonparty Commonwealth of Massachusetts*

Caleb Hayes-Deats, Esq.
(CHayes-Deats@lowellandassociates.com)
Schuyler Standley, Esq.
(SStandley@lowellandassociates.com)
Abbe David Lowell, Esq.
(ALowell@lowellandassociates.com)
Lowell and Associates, PLLC

Sarah Cummings Stewart, Esq.
(Sarah.Stewart@reedsmith.com)
Jeff Layne, Esq.
(JLayne@reedsmith.com)
Julia S. Ensor, Esq.
(JEnsor@reedsmith.com)
Reed Smith LLP
*Counsel to Defendant WPATH*